## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLORADO

JOHN AND JANE DOE,              )
)
      Plaintiffs,             )
)
v.                                     )
)      CIVIL ACTION NO:
T-MOBILE                     )      _____
3625 132ND AVENUE, SE       )
BELLVUE, WA 98006         )
)
WIRELESS VISION TECHNOLOGIES, LLC  )
40700 WOODWARD AVENUE     )
SUITE 250                  )
BLOOMFIELD HILLS, MI 48304    )
)
KEVIN MORENO-GABINO       )
)
POSSIBLE CORPORATE DOES AS YET  )
UNKNOWN TO PLAINTIFFS      )

      Defendants.

---

## JOINT COMPLAINT AND JURY DEMAND

---

Comes now Plaintiffs Jane Doe, by and through Greg Gold of the Gold Law Firm and John Doe, by and through Brian Hugen of Ramos Law and submit the following as their Joint Complaint against Defendants T-Mobile, Wireless Vision Technologies, LLC, ("Wireless Vision"), Kevin Moreno-Gabino, and other potential defendants yet unknown

## **INTRODUCTION**

1.      This case involves the theft and distribution by the assistant manager of a T-Mobile retail store of private personal, revealing and intimate photos of Jane and John Doe contained on Plaintiff John Doe's cell phone.

2.      Plaintiff John Doe had brought his phone to a T-Mobile retail store for service. Defendant Moreno-Gabino, then the assistant manager of the T-Mobile store, improperly retrieved the sensitive photos off the phone. Defendant Moreno-Gabino sought additional intimate photos and later money in the form of gift cards.  When John Doe did not pay, the assistant manager of the T-Mobile store, Defendant Moreno-Gabino, publicly distributed the photos to John Does friends or family members.

3.  Defendant Moreno Gabino had been placed in a position of trust as an assistant manager by Defendants T-Mobile and Wireless Vision Technologies, Inc. at a T-Mobile retail store.

4.  Defendants T-Mobile and Wireless Vision Technologies, Inc., advertise and publicly proclaim the merits of their privacy controls and privacy policies.

5.   Defendants T-Mobile and Wireless Vision Technologies, Inc., failed to properly supervise and failed to have adequate physical, technical, administrative or contractual safeguards to ensure that violations of personal privacy did not occur.

## **DISCUSSION OF PARTIES**

6.      Plaintiffs John and Jane Doe are and have been, at all times pertinent to the facts and allegations herein, residents of Colorado where they have lived since2016.

7.      Defendant T-Mobile USA is one of the largest cell-phone service companies in the United States and has operations in every state.  Its corporate headquarters is located in the State of Washington at 12920 Southeast 38th Street Bellevue, WA 98006.

8.      Defendant T-Mobile is registered to do business in Colorado.

9.      T-Mobile may have subsidiaries and there may exist other companies related to T-Mobile USA which may be revealed upon discovery to be culpable in the issues stated herein.  (T-Mobile and any potential subsidiary may be collectively referred to jointly and severally herein as "T-Mobile".)

10.     In addition to its cell delivery services, T-Mobile operates retail stores throughout the United States engaged in selling to the general public T-Mobile's cell phone services as well as sell or leasing cell phones and related products and services.

11.     T-Mobile also contracts with other companies in a franchisor/franchisee relationship to operate T-Mobile retail outlet stores under the "T-Mobile" name;

12.     These franchises, including the store where the incident occurred, all have the outward appearances to the general public as being T-Mobile stores, not a separate independent franchise store.

13.     Upon knowledge and belief, T-Mobile controls franchisees with regard to all essential products, procedures and policies, etc. such that the franchisees are in practical reality legal appendages of T-Mobile; they are, at least to the public, one and the same company.

14.     Defendant Vision Wireless is a Michigan corporation but operates over 700 T-Mobile franchises in 30 or more states, including Colorado.

15.     Upon knowledge and belief, Defendant Wireless Vision, LLC (herein referred to as "Wireless Vision") operated a T-Mobile cellphone store located at 905 S. Cesar E. Chavez Dr. ("Relevant Store") in Milwaukee, Wisconsin as a franchisee of Defendant T-Mobile.

16.     Defendant Wireless Vision is registered to do business in Colorado 40700 Woodward Avenue, Suite 250, Bloomfield Hills, MI 48304.

17.     The Relevant Store was a T-Mobile franchise store operated by Wireless Vision.

18.     The Relevant Store gave the outward appearance of being operated by T-Mobil; there was no indication apparent to either Plaintiff that the store was operated by any entity other than T-Mobile.

19.     T-Mobile controls Wireless Vision's operations and policies of its T-Mobile stores including, but not limited to, retail store appearance, retail store operation, sales or leasing of T-Mobile's cell services and cell phones, and marketing.

20.     T-Mobile's control of policies and operation over Wireless Vision's T-Mobile franchises include employee qualifications and training, and particularly with regard to the claims presented herein, protection of customers' private information that may be stored on customers' phones.[1]

21.     Defendant Moreno-Gabino was at all times pertinent to the matters set forth herein an employee of Wireless Vision serving as an assistant manager of the Relevant Store.

22.     Defendant Moreno-Gabino was at all times pertinent to the matters set forth herein an a representative of T-Mobile while serving as an assistant manager of the Relevant Store.

23.     As such, Defendant Moreno-Gabino was subject to the control of both Wireless Vision's and T-Mobile's policies and procedures – or lack thereof—particularly, as related to the wrongful/criminal acts described herein involving: the security of Wireless Vision's and T-Mobile's customers' private information maintained on the cellphones sold and serviced by Defendants T-Mobile and Wireless Vision.

---

[1] Defendants T-Mobile and Wireless Vision are at times herein referred to jointly as "T-Mobile" or "T-Mobile Defendants."

## JURISDICTION AND VENUE

24. This court has jurisdiction pursuant to 28 U.S.C. § 1332. There is diversity of citizenship amongst the parties and the amount in controversy far exceeds $75,000.00,

25. Venue is proper pursuant to 28 U.S.C. § 1391(b)(2). Plaintiffs reside in Colorado and substantial parts of the events or omissions giving rise to the claims described in this Complaint occurred in the District of Colorado. Specifically, Plaintiffs were victimized my Defendants wrongful or tortious acts while they resided in the state of Colorado.

## THEFT AND DISTRIBUTION OF PLAINTIFFS' PRIVATE PHOTOS BY THE T-MOBILE DEFENDANTS' MANAGEMENT REPRESENTATIVE

26. Plaintiffs John and Jane Doe were involved in a romantic relationship. In May, 2020, they returned to Wisconsin to visit family and friends.

27. While in Wisconsin and on or around May 22, 2020, Plaintiff John Doe took his Samsung phone to be repaired at the Relevant Store, a T-Mobile Franchise operated by Wireless Vision in Milwaukee, Wisconsin.

28. Both John Doe and Jane Doe phone's service through the same T-Mobile account.

29. John Doe's phone would not charge and was dead—it could not be turned on at the time John Doe presented to the store.

30. Plaintiffs John and Jane Doe were not married but were in a romantic relationship.

31. John Doe's phone contained revealing, private and intimate photographs of Jane Doe and him he took with Jane Doe's consent during the course of their relationship.

32. John Doe's phone also possessed revealing, private, and intimate photographs of Jane Doe that she had voluntarily taken and sent him during the course of their relationship.

33. Neither John nor Jane Doe wanted anyone other than themselves to ever see these photos.

34.  Defendant Kevin Moreno-Gabino was then an assistant manager for the T-Mobile Defendants and was working at the Wisconsin store where John Doe took his phone in to be fixed.

35.  The T-Mobile Defendants' management representative Defendant Moreno-Gabino upgraded John Doe's Samsung Galaxy 9 to a Samsung Galaxy 10.  The data from the old phone was added to the new phone via online transfer from John Doe's account.  The photos on the memory of the old phone were not deleted.

36.  John Doe left the old phone with Defendant Moreno-Gabino.  Defendant Moreno-Gabino represented to John Doe that T-Mobile policy was that the old phone would be disposed of after having the memory was wiped off the phone.

37.  John Doe left the T-Mobile Defendant's management representative Defendant Moreno-Gabino with his phone.

38.  Defendant Moreno-Gabino had the ability to access the contents if the phone could be turned on.

39.  Plaintiffs returned to Colorado.

40.  Despite his representations to Plaintiffs, Defendant Moreno-Gabino did not initially turn over the phone for disposal.

41.  Defendant Moreno-Gabino was able to power on John Doe's phone.

42.  Absent any oversight from the T-Mobile Defendants, he went through Plaintiff John Doe's pictures and discovered the personal, revealing and intimate photographs of Jane Doe and him.  He transferred these photographs to himself and saved them.

43.  Subsequently, Defendant Moreno-Gabino, using the handle, "Mr.Stealyosheit," messaged Plaintiff John Doe in Colorado on or about November 11, 2020 through Instagram.  He

initially asked John Doe to send more personal, revealing, and intimate videos of Jane Doe.  John Doe did not respond.

44. On November 20, 2020, Defendant Moreno-Gabino sent one of the explicit images to Plaintiff John Doe and the following exchange of messages occurred.

> Def. MG:  [sends explicit image] "Your bitch loves sending me pics like this."
> Pl. John D:  "WTF."  "How the hell you get that?"
> Def. MG:  Shes my bitch now.  [sends explicit image.]
> Def. MG:  I need u to make a video (have my bitch show everything) or I will be sending these to everyone YOU KNOW.

45. Defendant Moreno-Gabino then formulated a plan to further violate Plaintiffs privacy and to improperly and illegal obtain money.  He took overt steps to move forward with his plan.

46. Later, on or about November 20, 2020, he again contacted John Doe and told him he had changed his mind and he wanted 5 - $100.00 gift cards

47. The T-Mobile Defendants' management representative Defendant Moreno Gabino sent several of the revealing, personal, and intimate photos he had illicitly obtained to John Doe as proof he had the photos.

48. John Doe refused to accede to Defendant Moreno-Gabino's shake down attempt.

49. The T-Mobile Defendants' management representative responded with increasingly aggressive attempts to obtain money.  On or about November 21, 2020, he sent messages to John Doe in Colorado that read, "[w]here is the money pussy", and "Don't say I did no give you a chance." [sic]

50. When Defendant Moreno-Gabino did not receive payment, sent private, revealing and intimate photo(s) to individuals on Instagram who had liked or commented on posts John Doe had made on Instagram.  These were individuals Defendant Moreno-Gabino assumed were friends and family.

51.  The T-Mobile Defendants' management representative knew that his viewing of the photos was a violation of Plaintiffs' privacy.  He also knew that sharing of any of the personal, intimidate or revealing photos could have impacts on Plaintiffs' reputation.

52.  Plaintiff Jane Doe works as an insurance agent and she feared that public dissemination of the photos could damage her ability to perform her job and to maintain her professional reputation.  She also feared that revelation of the photos would lower her reputation and esteem in the eyes of friends, family and work colleagues.

53.  The T-Mobile Defendants' management representative humiliated and embarrassed Jane and John Doe and betrayed their trust.

54.  The T-Mobile Defendants' management representative humiliated and embarrassed the T-Mobile community and betrayed their trust.

55.  A warrant was issued by the State of Colorado for Defendant Moreno-Gabino's arrest for several criminal infractions resulting from his conduct.

56.  Colorado assumed jurisdiction because Plaintiffs were victimized in Colorado. Defendant Moreno-Gabino was extradited to Colorado to face those criminal charges.

57.  Defendant Moreno-Gabino admitted he had transferred copies of the personal images to his own phone and attempted to humiliate and embarrass Plaintiffs.

58.  Defendant Moreno-Gabino subsequently pled guilty to at least some of the charges and has been cooperating in disclosing the details of his employment at the relevant store and his outrageous conduct.

## THE T-MOBILE DEFENDANTS' FAILURE TO EXERCISE CONTROL OVER THEIR MANAGER

59. Defendant Moreno-Gabino used his position with Defendants T-Mobile and Wireless Vision, LLC, to engage in his improper, outrageous, and tortious activities.

60.     Electronic media allows fast and almost instantaneous national and international distribution of images.

61.     Given the nature of cell phones, Plaintiffs are gravely concerned that at least some of those who received the images may have or could pass them to other persons.

62.     At any moment, private photos of Plaintiffs could be shared with around the globe.

63.   The T-Mobile Defendants failed to adequately supervise Defendant Mr. Moreno-Gabino.

64.   Defendants T-Mobile and Wireless Vision, LLC, failed to have in place adequate training, policies, or procedures to prevent the type of activities in which Defendant Moreno-Gabino engaged.

65.   Defendants T-Mobile and Wireless Vision, LLC did nothing to properly prevent their management representative from violating Plaintiff's privacy.

66.     T-Mobile publicly proclaims in Colorado and nationally that it seeks to protect customer privacy.

67.     Customer privacy and integrity of T-Mobile's customer's data is a core focus of T-Mobile's operations.

68.     T-Mobile and Wireless Vision understand that its customers keep deeply sensitive personal information on their phones.

69.     T-Mobile's online Privacy notices states that, "[y]ou trust T-Mobile to connect you to the world every day, and we're working hard to earn a place in your heart. A big part of that is maintaining your privacy."

70.     T-Mobile assures current and prospective customers that, "[w]ith T-Mobile, you don't have to worry.  Our privacy principles mean you can trust us to do the right thing with your data."

71.     T-Mobile's public statements about maintaining customer privacy are used to market its services and give it a competitive edge over competitors.

72.     T-Mobile's public website, accessible throughout Colorado and the United States, proclaims that:

> We use administrative, technical, contractual, and physical safeguards designed to protect your data while it is under our control.  For example, when you contact us by phone or visit us in our stores, we have procedures in place to make sure that only the primary account holder or authorized users have access.

73.     T-Mobile markets its products and services on the assurance that they will take all steps to ensure that customer's private data will not be compromised.

74.     Upon information and belief, T-Mobile and/or its retail store franchise holders have experienced prior instances where employees improperly accessed customer data.

75.     T-Mobile is aware of other lawsuits against competitors for similar violations of customer policies that have resulted in million dollar plus settlements.  For example, public records indicate that Apple paid a multimillion-dollar settlement to a woman who sent her iPhone in for repair and had her private intimate images and a sex video from the device posted online by repair technicians.

76.     Plaintiffs believed that the T-Mobile defendants had policies, procedures, and practices in place to ensure that their representatives and employees knew how to properly handle customer data and methods in place to ensure compliance with these policies, procedures, and practices.

77.  Plaintiffs believed that there would be adequate physical, administrative and technical safeguards in place to protect his data.

78.  Defendant Moreno-Gabino was able to perpetrate his tortious and criminal actions because he had full access to the old phone and the electronic abilities to copy the information only because of the privileges accorded to him as an employee, assistant manager and agent of T-Mobile Defendants.

79.  Plaintiff John Doe provided Defendant Moreno-Gabino access to his old phone only because he believed he could trust an employee of the T-Mobile Defendants acting in the course and scope of his employment with the T-Mobile Defendants.

80.  The T-Mobile Defendants knew that its employees might need to request access to phones from customers and that they might be able to view sensitive or personal information.

81.  Plaintiffs believed that the T-Mobile Defendants would have training, policies, procedures, supervision and oversight to wrongful use and access of electronic devices.

### CLAIM 1:  EXTREME AND OUTRAGEOUS CONDUCT
### (ALL DEFENDANTS)

82.  Plaintiffs incorporate by reference all other paragraphs of this Complaint as if fully set forth herein.

83.  As described in this Complaint, including but not limited to the T-Mobile Defendant's failure to train and supervise its employees to protect the most private and personal information, Defendants engaged in extreme and outrageous conduct.

84.  As described in this Complaint, Defendants did so recklessly or with the intent of causing the plaintiff severe emotional distress; and

85.  Plaintiffs suffered severe emotional distress.

## CLAIM 2: INVASION OF PRIVACY—BY INTRUSION OR BY PUBLIC DISLCOUSRE OF PRIVATE FACTS
### (Defendant Moreno-Gabino)

86.     Plaintiffs incorporate by reference all other paragraphs of this Complaint as if fully set forth herein.

87.     Defendant Moreno-Gabino intentionally invaded Plaintiffs' privacy by looking at Plaintiff John Doe's phone and view personal photos.

88.     He used his position with the T-Mobile Defendants to secure access to Plaintiff John Doe's phone, view and copy personal photos.

89.     Defendant Moreno-Gabino disseminated them to members of the public.

90.     Before the disclosure, the photos were private.  Indeed, Plaintiffs did not want anyone other than themselves to ever see the photos.

91.     Defendant Moreno-Gabino knew or should have known that the photos were private.

92.     Defendant Moreno-Gabino's invasion of Plaintiffs' privacy caused them injury and damages.

93.     Defendant Moreno-Gabino's public disclosure of Plaintiffs' private information has caused them injury and damages.

94.     As a proximate consequence thereof, Plaintiffs have suffered and continue to suffer severe mental anguish, embarrassment, and humiliation.

95.     As such, Plaintiffs are entitled to all remedies prescribed by law.

## CLAIM 3: VIOLATION OF C.R.S. 13-21-1401 *et. seq.* FOR UNAUTHORIZED DISCLOSURE OF INTIMATE IMAGES

96.     Plaintiffs incorporate by reference all other paragraphs of this Complaint as if fully set forth herein.

97.    Defendants, jointly, and severally, acting by and through their agents and employees have violated Colorado's "Uniform Civil Remedies for Unauthorized Disclosure of Intimate Images Act" ("UDDIIA"), C.R.S. 13-21-1401 *et. seq.*[2]

98.    By their acts described herein, Defendants tortiously violated Plaintiffs' "private" "intimate images," as those terms are defined under the UDIIA, by maliciously publishing said intimate images without consent of or knowledge of Plaintiffs.

99.    This egregious conduct has caused Plaintiffs to suffer and continue to suffer mental and emotional anguish, embarrassment and humiliation as well as other losses, damages, or harms.

100.    The UDIIA specifically allows for a Plaintiff bringing an action under UDIIA to use a "pseudonym in place of the true name of the plaintiff." C.R. S. 13-21-1405(1)(a).

101.    Plaintiffs are entitled to all the remedies afforded under the UDIIA as stated at C.R.S.13-21-1406.

102.    Violations of the UDIIA are subject to civil remedies pursuant to C.R.S. 13-21-1406.

103.    Plaintiffs are in the class of persons the UDIIA is designed to protect.

## CLAIM 4: NEGLIGENCE
## (T-MOBILE DEFENDANTS)

104.    Plaintiff hereby incorporates by reference each and every paragraph of this Complaint as if fully set forth herein.

105.    The T-Mobile Defendants owed a duty to the Plaintiff to exercise reasonable care with respect to Plaintiff's phone and the data contained thereon.
These duties include, but are not limited to:

---

[2] The UDIIA is to be construed consistent with the federal "Communications Decency Act of 1996" ("CDA"), 47 U.S.C. Sec. 230. See C.R.S. Sec. 13-21-1408.

a.    A duty to exercise that degree of care, skill, caution, diligence and foresight exercised by, and expected corporate entities in similar situations.

b.    A duty to exercise care by having appropriate T-Mobile and Wireless Vision policies and procedures;

c.    A duty to avoid exposing Plaintiffs to harm;

d.    A duty to to protect Plaintiff to violations of personal and private information,

106.    The T-Mobile Defendants breached their duty and were negligence, careless and reckless.

107.    The T-Mobile Defendants' negligence was the cause of Plaintiffs' damages.

## CLAIM 5:  WILLFUL AN WANTON CONDUCT
## (ALL DEFENDANTS)

108.    Plaintiffs incorporate by reference all other paragraphs of this Complaint as if fully set forth herein.

109.    Defendants were negligent and/or wanton in causing or allowing the use and abuse of Plaintiffs' private and sensitive material for the prurient purposes.

110.    This negligent or reckless conduct was in violation of Corporate Defendants' known duties and responsibilities and amounted to conscious and callous disregard of the foreseeable consequences.

111.    As a proximate consequence thereof, Plaintiffs have suffered and continue to suffer severe mental anguish, embarrassment and humiliation as well as other losses and damages.

112.    As such, Plaintiffs are entitled to receive all remedies prescribed by law.

## CLAIM 6: BREACH OF CONTRACT
## (T-Mobile Defendants)

113.    Plaintiffs incorporate by reference all other paragraphs as if fully set forth herein.

114.    Plaintiff John Doe entered into a contract with the T-Mobile Defendants.

115.    T-Mobile Defendants agreed to protect the private data and information of its customers.

116.    The T-Mobile Defendants agreed to use reasonable care to protect the private data and information of its customers.

117.    The T-Mobile Defendants agreed use reasonable care such that when a customer turned in a phone for trade-in, repair or other reasons, the customer's private data and information would not be accessed.

118.    Defendants failed to protect Plaintiff John Doe's personal and private data.

119.    Defendants breached the expressed and implied assurances and contractual obligations for privacy and non-disclosure of the private and sensitive data their customer, Mr. Doe, had on his cell phone.

120.    This contractual obligation and assurance was an essential part of the agreement to allow Defendants to work on Mr. Doe's cell phone and was used to induce such agreement and payment for the services described hereinabove.

121     In fact, Mr. Doe asked Defendant Moreno-Gabino what would happen to his phone when he turned it in.

122.    The important privacy aspect of this contract was known and anticipated by Defendants to be connected to matters of mental solicitude and personal security and peace of mind.

123.    Because of this breach of contract Plaintiffs did not receive the secure services for which Mr. Doe bargained and paid.

124.    Plaintiff John Doe complied with all terms of the contract.

125.     This egregious conduct has caused Plaintiffs to suffer and continue to suffer mental and emotional anguish, embarrassment and humiliation as well as other losses or damages.

126.     As such, Plaintiffs are entitled to receive all remedies prescribed by law.

### CLAIM 7: NEGLIGENT SUPERVISION, TRAINING AND ENTRUSTMENT (T-MOBILE DEFENDANTS)

127.     Plaintiff incorporates herein all other paragraphs of this Complaint as though fully set forth herein.

128.     Corporate Defendants knew or had reason to know that agents/employees had in the past and would foreseeably in the future misuse, abuse or publicize private and sensitive material that they had access to by reason of this type of work for customers like Mr. Doe.

129.     The T-Mobile Defendants know that customer phones contain a wealth of personal data including often information, videos, images of a very personal and intimate nature as well as financial and personally identifiable information.  As such, protection of customer data is a primary focus for the T-Mobile Defendants.

130.     Corporate Defendants failed to take reasonable and proper steps to train, instruct, supervise, and oversee such work despite notice of the likely temptations on the part of their agents/employees once given access to materials such as are involved in this matter.

131.     Corporate Defendants have further failed to take adequate steps to fully and properly investigate this matter and to take corrective measures and accept accountability for the reported and confirmed misconduct set forth herein.  This failure amounts to the ratification of the conduct.

132.     The T-Mobile Defendants owed a duty to Plaintiff to go beyond a job application and to use reasonable care in hiring and training competent and qualified staff, and in overseeing

and supervising the performance of such staff. That staff includes assistant managers and managers including Defendant Moreno-Gabino.

133.     The T-Mobile Defendants breached their duty of reasonable care by retaining an Defendant Moreno-Gabino; failing to properly and adequately screen the qualifications, criminal background and his employment history.

134.     The T-Mobile Defendants breached their duty by failing to adequately monitor the performance of Defendant Moreno-Gabino to ensure that he performed his duties in an appropriate manner, consistent with its own policies and in a manner that comports with industry standards.

135.     The T-Mobile Defendants owed Plaintiffs a duty of care including, but not limited to:

      a.   A duty to provide Plaintiffs with reasonable and appropriate care informed by State and Federal laws as well common law;

      b.   A duty to exercise that degree of care, skill, caution, diligence and foresight exercised by, and expected corporate entities in similar situations.

      c.   A duty to exercise that degree of care that ensured that employees complied with T-Mobile and Wireless Vision's policies and procedures;

      d.   A duty to avoid exposing Plaintiffs to harm;

      e.   A duty to to protect Plaintiff to violations of personal and private information;

      f.   A duty to avoid exposing Plaintiffs to unfit employees;

      g.   A  duty of care to Plaintiff when hiring, training retaining supervising and evaluating its employees to timely;

137.    The T-Mobile employees and its employees, offices, agents and/or servants breached their duties of care and otherwise acted negligent in the care and treatment of Plaintiff, including but not limited to the following:

a.    Failing to provide Plaintiffs with reasonable and appropriate care informed by State and Federal laws as well common law;

b.    Failing to exercise that degree of care, skill, caution, diligence and foresight exercised by, and expected corporate entities in similar situations.

c.    Failing to exercise that degree of care that ensured that employees complied with T-Mobile and Wireless Vision's policies and procedures;

d.    Failing to prevent exposure of Plaintiffs to harm;

e.    Failing to use care to protect Plaintiffs to violations of personal and private information;

f.    Exposing Plaintiffs to unfit employees;

g.    Failing to use reasonable care when hiring, training retaining supervising and evaluating its employees to timely;

## CLAIM 8:  COLORADO CONSUMER PROTECTION ACT (T-MOBILE DEFENDANTS)

138.    Plaintiff incorporates all allegations of this Complaint as if fully set forth herein.

139.    The T-Mobile Defendants participated in prohibited and/or deceptive trade practices, in the course of the Defendants' business, vocation, or occupation, within the meaning of C.R.S. § 6-1-101 et seq., which have harmed the Plaintiff and which have an impact on the broader public.

140.    Such prohibited acts include but are not limited to:

- Representing that Defendants' privacy policies, monitoring, protection, and other related services, are of a particular standard, quality, or grade, when Defendant knew or should know that they are of another;
- Representing that one of Defendants' core values was customer privacy, when Defendant knew or should have known egregious violations of personal privacy have occurred on multiple occasions.
- Defendant advertised its services in Colorado with the intent not to provide such goods and services as advertised;
- Engaging in deceptive or misleading trade and business practices; and
- Defendant failed to disclose material information concerning its goods and services, which information was known at the time of an advertisement or sale and such failure to disclose such information was intended to induce Plaintiff's to enter into a transaction.

141.    As a direct and proximate cause of the Defendant's deceptive trade practices, Plaintiff has been harmed in an amount to be proven at trial.

142.    Plaintiffs were harmed and damaged in Colorado.

143.    The T-Mobile Defendants' national marketing impacts Colorado consumers.

144.    This egregious conduct has caused Plaintiffs to suffer and continue to suffer mental and emotional anguish, embarrassment and humiliation as well as other losses or damages.

145.    As such, Plaintiffs are entitled to receive all remedies prescribed by law including damages specifically allowed by C.R.S. § 6-1-101 et seq.,

## <u>CLAIM 8:  RESPONDEAT SUPERIOR AND RATIFICATION<br>(T-MOBILE DEFENDANTS)</u>

146.    Plaintiff incorporates herein all other paragraphs of this Complaint as though fully set forth herein.

147.    Defendants are responsible for their own acts, omissions and negligence.

148.    Defendants are vicariously responsible for the acts and omissions of all of its agents and employees including but not limited to, Defendant Moreno-Gabino, administrators, managers, under the doctrine of *respondeat superior.*

149.    The T-Mobile Defendants have further failed to take adequate steps to fully and properly investigate this matter and to take corrective measures.

150.    T-Mobile has failed to accept accountability for the reported and confirmed misconduct set forth herein.

151.    Moreover, the T-Mobile Defendants also ratified the tortious, improper and/or illegal conduct alleged herein.

152    As a proximate consequence thereof, Plaintiffs have suffered and continue to suffer severe mental anguish, embarrassment and humiliation.

153    As such. Plaintiffs are entitled to all remedies provided by law.

**WHEREFORE**, Plaintiffs respectfully requests that judgment be entered in her favor and against Defendants as follows:

a.    For compensatory economic damages in amounts to be proved at trial;

b.    For compensatory non-economic damages in amounts to be proved at trial;

c.    For all pre- and post- judgment interest as allowed by law;

d.    For reasonable attorneys' fees, expenses, expert witness fees, and costs of suit herein;

e.    For all other damages allowed by statute or law including damages allowed by the Colorado Consumer Protection Act; and

f.    For such other and further relief as this Court deems just and proper.

## <u>JURY DEMAND</u>

Plaintiffs demand a trial by jury for all claims stated herein.

THE GOLD LAW

*s/Gregory A. Gold*
Gregory A. Gold, Esq.
*Attorney for Melissa Justus*
7375 East Orchard Road, Suite 300
Greenwood Village, CO 80111
Phone: 303-694-4653
E-Mail: Greg@TheGoldLawFirm.net

RAMOS LAW

Brian Hugen, Esq.
*Attorney for John Doe*
10190 Bannock St., Ste. 200
Northglenn, CO 80260
Phone: 303.733.6353
E-Mail: brianh@ramoslaw.com